******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom MULLINS and KAHN, Js., join, dissenting. I disagree with the majority that the trial court's decision denying the motion for statutory fees and expenses, *without prejudice to refiling that motion at a later date,* is an immediately appealable ruling under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The trial court's determination that the automatic stay provision of the federal Bankruptcy Code, 11 U.S.C. § 362 (a) (1) (2012), applies so as to delay satisfaction of such a request is not one that "so concludes the rights of the parties that further proceedings cannot affect them."[1] *State* v. *Curcio*, supra, 31. In concluding otherwise, the majority substitutes a policy analysis for the limited exceptions to the final judgment rule. This approach exacerbates the already murky state of our final judgment jurisprudence, a consequence that is not only unfortunate but unnecessary given other procedural avenues available to address this matter. For the reasons that follow, I would dismiss the writ of error for lack of a final judgment.

This court has explained that the exception to the final judgment rule on which the majority relies "requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be *irretrievably lost* and the [parties] *irreparably harmed* unless they may immediately appeal." (Emphasis added; internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 746, 150 A.3d 1109 (2016). Under this "narrow" exception; (internal quotation marks omitted) id., 752; an interlocutory order will be deemed final for purposes of appeal "if it involves a claimed right the legal and practical value of which would be *destroyed* if it were not vindicated before trial." (Emphasis added; internal quotation marks omitted.) *State* v. *Bacon Construction Co.*, 300 Conn. 476, 481–82, 15 A.3d 147 (2011). "[E]ven when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong of *Curcio*." *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 231, 901 A.2d 1164 (2006).

Under these parameters, the first step is to identify the existing right at issue. In the present case, that right is prescribed by statute. General Statutes § 49-25 provides in relevant part: "[I]f for any reason the [foreclosure by] sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. . . ." Thus, the right at issue is simply the right of the plaintiff in error, Douglas M. Evans, as the committee

for sale, to be paid such expenses and costs.

The next step is to determine whether that right is irretrievably lost and the plaintiff in error is irreparably harmed due to the trial court's decision denying his request for payment of such fees and costs, without prejudice to renewing that request once the automatic bankruptcy stay is lifted. The answer to that question is "no." The plaintiff in error's right to recover fees and expenses remains intact, undiminished in any respect. Compare *Perry* v. *Perry*, 312 Conn. 600, 620, 95 A.3d 500 (2014) (trial court's order granting only portion of fees that children's attorney owed to another attorney who represented her in related postjudgment proceeding substantially impaired her right to her own fees and she could not vindicate that right in separate proceeding should other attorney sue to recover his fees), and *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 232–34 (order denying plaintiffs' motion for prepleading security under statute prohibiting unauthorized insurer without assets in Connecticut from defending action until it posts security would cause irreparable harm if plaintiffs cannot appeal until conclusion of trial because court will be unable to restore plaintiffs' right either to have defendants post security or to obtain default judgment against defendants if they fail to do so), with *Incardona* v. *Roer*, 309 Conn. 754, 756–57, 763, 73 A.3d 686 (2013) (trial court's order imposing monetary sanctions on plaintiffs for failure to comply with discovery order did not so conclude rights of parties that further proceedings could not affect them when court indicated that it was prepared to modify order if later developments warranted such action), and *New England Savings Bank* v. *Nicotra*, 230 Conn. 136, 139–40, 644 A.2d 909 (1994) (trial court's order appointing receiver of rents in foreclosure action did not so conclude rights of parties because, "[a]lthough a receivership takes designated funds out of the control of the mortgagor, it does not vest their control in the foreclosing mortgagee, who has no claim upon the income and profit in [the receiver's] hands as such; since the funds are legally in the possession of the court subject to whatever disposition it may order" [internal quotation marks omitted]).

The mere delay in the plaintiff in error's receipt of his fees and costs does not destroy the legal and practical value of the right to recover them. It may impinge on the *existing* right, but that right is subject to vindication once the stay is lifted. See generally *Rostad* v. *Hirsch*, 128 Conn. App. 119, 125, 15 A.3d 1176 (2011) ("to decide whether an interlocutory ruling has caused an appellant to suffer irreparable harm, it is relevant to inquire whether the trial court, at the time of the final judgment, will be able to provide remedial relief"). If a delay in obtaining relief was, in and of itself, an injury sufficient to authorize an interlocutory appeal, we would not have held, for example, that "the denial of a statute of limita-

tions defense is not itself an appealable final judgment . . . ." *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 354 n.9, 63 A.3d 940 (2013); accord *Blakely* v. *Danbury Hospital*, supra, 323 Conn. 744, 753 (denial of motion for summary judgment on ground that jurisdictional time limitation had lapsed did not satisfy second prong of *Curcio*). Instead, vindication of the defendant's right not to have to defend against a stale claim must await the close of trial. We strictly adhere to the final judgment rule even though the defendant may incur significant litigation expenses defending against the merits of a claim that ultimately is deemed time barred.

The majority's decision that the second prong of *Curcio* is satisfied characterizes the right sought to be vindicated as the plaintiff in error's "entitle[ment] to recover fees and costs *immediately upon filing a proper and timely motion for fees*." (Emphasis in original.) The statute giving rise to the plaintiff in error's right, however, includes no such temporal requirement, and it is not the proper function of this court to engraft that language.[2] See *State* v. *Obas*, 320 Conn. 426, 436, 130 A.3d 252 (2016) (noting that, "[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute for [i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language" [internal quotation marks omitted]). The majority points to no authority that entitles the plaintiff in error to interest on those fees and costs during the intervening period between the filing of the motion and the court's order granting that motion, or until payment is made, either of which might imply the right to immediate payment.[3]

On the basis of its characterization of the right as one to immediate payment, the majority concludes that, in the absence of an interlocutory appeal, there will be irreparable harm to that right because, if the plaintiff in error cannot seek review of the order until the automatic stay is terminated and the trial court rules on the merits of his motion, that right will be "forever lost . . . ."[4] The fact that the plaintiff in error will have to wait to vindicate his right to receive fees is precisely what is required. This is so because future developments in the trial court, namely, the receipt of his fees, will render the interlocutory appeal unnecessary.

In reality, the majority does not apply the second prong of *Curcio* but instead creates a third, public policy prong. That approach raises three problems. First, the legislature could have authorized immediate review of a writ of error implicating a matter of public interest in the absence of a final judgment, as it has for the parties to the case, but it did not. See General Statutes § 52-265a (a) ("any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public

interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court").

Second, this court has emphatically rejected the majority's approach: "To be clear, policy concerns are not a factor under either prong of *Curcio*, and, accordingly, it would be inappropriate to rely on policy alone to justify allowing an appeal under *Curcio*." *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 762 n.10, 48 A.3d 16 (2012). Although this court has previously cited public policy reasons to bolster our conclusion that immediate review is warranted under the first prong of *Curcio*, we have made clear that those reasons did not displace the requirement of satisfying *Curcio*. See id., 773 ("The discovery order in the present case constitutes a final judgment because it terminated a separate and distinct proceeding and thus satisfied the first prong of *Curcio*. Additionally, it implicates important policy considerations that militate against requiring an officer of the court who also is not a party to the underlying action to be held in contempt of court in order to be able to seek appellate review."); see also id., 762 ("[f]or these reasons alone, then, the discovery order in the present case is a final judgment because it satisfies the first prong of *Curcio*, just as the discovery order in *Abreu* [v. *Leone*, 291 Conn. 332, 968 A.2d 385 (2009)] constituted a final judgment because it arose out of a separate proceeding brought by a nonparty"). Public policy has been considered in our analysis under the second prong of *Curcio* only insofar as such policy illuminated the contours of a common-law right claimed to be harmed. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–87, 865 A.2d 1163 (2005) (explaining why purpose of absolute immunity under common law, protecting against threat of suit, compels conclusion that denial of summary judgment on ground of such immunity gives rise to immediately appealable final judgment due to irreparable harm). The majority's suggestion that this court's decision in *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987), sanctioned such an approach misconstrues that case. See id., 255–56 (explaining that, although in some instances federal courts of appeals have entertained appeals from discovery orders presenting issues of claimed violations of certain privileges, "[t]his court has no discretionary jurisdiction comparable to that given the federal courts by [28 U.S.C.] § 1292 [b] to entertain appeals from interlocutory orders, except as provided [for public interest appeals] in . . . § 52-265a"). Although our final judgment jurisprudence may not be a model of clarity, we should not muddy those waters further to accommodate the present case.

The only unusual feature of the present case is that the legal issue—whether the automatic stay provision of the Bankruptcy Code applies to § 49-25—could avoid

review in every case because a reviewing court would never be able to afford any practical relief once the stay has been lifted. However, if the legal issue were rendered moot once the stay is lifted, for all of the reasons identified by the majority, such a circumstance would appear to satisfy the capable of repetition, yet evading review exception to mootness. See *Wendy V.* v. *Santiago*, 319 Conn. 540, 545–46, 125 A.3d 983 (2015) (setting forth parameters of exception). Insofar as the majority contends that the issue might not be reviewable because the plaintiff in error would no longer be aggrieved by the time judgment is final, this result proves my point.[5]

This brings me to the third problem with the majority's approach. There is no reason to expand and muddy our final judgment jurisprudence in this case because there were other avenues of relief available to the plaintiff in error. Counsel for the plaintiff in error was aware of our Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, 150 Conn. App. 745, 93 A.3d 1167 (2014), on which the trial court relied to conclude that the automatic stay applies to a motion for fees and expenses by a committee for sale. As his firm had done in a similar case, counsel could have sought a declaratory judgment from the bankruptcy court that the stay does not apply to the fees and costs in the present case. See *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015) (declaratory judgment in favor of committee of sale); *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (January 29, 2015) (granting motion for fees before stay was lifted in light of declaratory judgment). If the plaintiff in error wanted to have *Shivers* overruled so as to avoid such proceedings in other cases, he could have filed an action for a declaratory judgment in state court to obtain such relief.[6] The time and expense of pursuing such avenues surely are not greater than if pursuing an appeal.

I concede that there is ample reason to question the vitality of *Shivers*, as it is in conflict with the conclusions reached by several federal bankruptcy courts, whose primary charge is to interpret and apply federal bankruptcy law. See *In re Tasillo*, supra, United States Bankruptcy Court, Docket No. 14-21683; *In re VMC Real Estate, LLC*, Docket No. 11-20452 (ASD), 2012 WL 836724, *2 (Bankr. D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198, 204 (Bankr. D. Conn. 1989); see also *In re Danise*, 112 B.R. 492, 494 and n.2 (Bankr. D. Conn. 1990). But see *In re Hooker*, United States Bankruptcy Court, Docket No. 18-20504 (JJT) (D. Conn. June 27, 2018) (concluding that stay applies but relief may be afforded). Given such tension, I share the majority's concern about the viability of *Shivers* going forward. However, in the absence of jurisdiction over the writ, this court is compelled to dismiss the writ of error without reaching its merits.

Accordingly, I respectfully dissent.

[1] "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31. Only the second prong of *Curcio* is at issue in the present case.

[2] Section 49-25 obviously does not specify a time limitation in which to make payment. Even if we could infer that payment must be made within a "reasonable" period of time in the absence of a specified period, the question would remain whether the typical duration of an automatic bankruptcy stay; see footnote 4 of this dissenting opinion; would constitute an unreasonable delay.

[3] Of course, if the plaintiff in error were entitled to interest, then he clearly could not show that the delay in payment while the stay is pending would cause irreparable harm.

[4] Ironically, but for the filing of the present writ of error, the plaintiff in error would have received his fees and costs long before this court could have issued its decision on this writ. The defendant in error, the named defendant in the underlying foreclosure action, Jacquelyn N. Crawford, filed for chapter 13 bankruptcy protection on February 8, 2017, and the bankruptcy stay was lifted less than six months later, on July 28, 2017. The committee deed was approved by the trial court on September 26, 2017, and an amended motion for supplemental judgment was filed on November 15, 2017, at which time the defendant in error, the plaintiff in the underlying foreclosure action, U.S. Bank National Association, as Trustee, requested that the committee's fees and costs of $5839.39 be paid. The trial court denied that motion because of the pendency of this writ of error, and ordered no payment until the conclusion of this appeal. Although the automatic bankruptcy stay lasted less than six months, a period of five months lapsed between the time that the trial court denied the plaintiff in error's motion for the fees and the date on which he filed his appellate brief in this court.

[5] There is case law from this court suggesting that, even in the absence of aggrievement, we could exercise jurisdiction if the party seeking review is in a class whose interests are capable of repetition, yet evading review. See *Kulmacz* v. *Kulmacz*, 177 Conn. 410, 412–13, 418 A.2d 76 (1979) ("A requisite element of appealability is that the party claiming error in the decision of the trial court be aggrieved . . . for if a party attempting to appeal can by no possibility suffer injury by the judgment, he should not be permitted to appeal. . . . There are few exceptions to this basic tenet of appellate practice, and those anomalies involve either representatives of parties . . . or persons whose interest, albeit terminated, is capable of repetition, yet evading review. . . . The plaintiff . . . is not an aggrieved person whose interests will be adversely affected by an unfavorable judgment. . . . There is nothing in the record to show that the plaintiff has appeared for other interests in a representative capacity; nor is she in a class whose interests have been described as capable of repetition." [Citations omitted; internal quotation marks omitted.]); see also *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995) (explaining that, in context of capable of repetition, yet evading review requirement, "[t]he doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue"). I express no opinion on this matter.

[6] I am not suggesting that a trial court would have authority to overrule *Shivers* in a declaratory judgment action or that such an action properly would be pursued by the plaintiff in error after his request for fees had been denied without prejudice. I am simply suggesting that, knowing that the trial court would have been bound by *Shivers*, the plaintiff in error could have sought a declaration that *Shivers* conflicts with federal law, before filing a request for fees that inevitably would be denied, and that there would have been no jurisdictional impediment to appellate review of that decision, as there is under the present procedural posture. See *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 756, 6 A.3d 726 (2010) (A declaratory judgment action "requires that the plaintiff be in danger of a loss or of uncertainty as to [his] rights or other jural relations and that there be a bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations . . . . [D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." [Internal quotation marks omitted.]).

Although we have not yet had occasion to address this question, it appears to me that the plaintiff in error also could have asked the trial court to

certify the question to this court of whether *Shivers* was properly decided. See General Statutes § 52-235 (a) ("[t]he Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein"). Although this statute limits such reservations to "cases in which an *appeal* could lawfully have been taken to said court had judgment been rendered therein"; (emphasis added) General Statutes § 52-235 (a); it appears that this limitation is simply intended to preclude reservations in cases in which review is not available after final judgment. In *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 726, 207 A.3d 493 (2019), this court recently concluded that General Statutes § 51-197f, which governs petitions for certification to appeal after a final determination of "any appeal" from the Appellate Court, included a writ of error.