******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# TOV REALTY, LLC *v.* ANGEL SUAREZ ET AL.
## (SC 21183)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Prior to the commencement of the present summary process action, the defendant tenant, S, filed a complaint with the Hartford Fair Rent Commission, alleging that the plaintiff landlord was unfairly increasing his monthly rent. While the proceeding before the commission was pending, the plaintiff served S with a notice to quit for nonpayment of rent. Thereafter, the commission, following a hearing, found that the plaintiff's proposed rent increase was unfair and that the plaintiff had retaliated against S by seeking an eviction within six months from the filing of S's fair rent complaint, in violation of statute (§ 47a-20). The commission also ordered the plaintiff to cease and desist from pursuing its retaliatory eviction and to withdraw its summary process action. Shortly after the commission issued its decision, however, the plaintiff served S with its summary process complaint. The plaintiff, pursuant to statute (§ 7-148e), also filed an administrative appeal in the Superior Court, challenging the commission's decision. In the summary process action, S raised the special defense of retaliatory eviction and an equitable defense seeking dismissal of the action in light of the commission's decision and order. Thereafter, the trial court granted S's motion to stay the summary process action pending the resolution of the administrative appeal. The plaintiff, upon certification by the Chief Justice, pursuant to statute (§ 52-265a), that a matter of substantial public interest was involved, appealed to this court from the trial court's decision to grant S's motion to stay the summary process action. On appeal, the plaintiff claimed, inter alia, that the trial court lacked the statutory authority to stay the summary process action and, in the alternative, that the court had abused its discretion in doing so. *Held*:

A review of the relationship between the fair rent commission statutes (§§ 7-148b through 7-148f) and the landlord-tenant statutes (§ 47a-1 et seq.), as well as the legislative history of and case law interpreting those statutes, led this court to conclude that a fair rent commission's ruling is relevant to the issue of whether a tenant has met his or her obligation to pay rent, which is an issue that directly affects the merits of a summary process action for nonpayment of rent.

The plaintiff could not prevail on its claim that the expeditious nature of a summary process action meant that a trial court's authority to grant a stay or continuance of such an action is limited to that provided by statute (§§ 47a-35 and 47a-39) and that the trial court in the present case, therefore, did not have authority to grant S's motion to stay.

The statutes on which the plaintiff relied govern stays in the postjudgment context and say nothing about the trial court's inherent authority to manage its docket by granting appropriate stays or continuances during the pendency of a summary process action, and there was no statute that deprived the trial court of authority to stay an action when it is proper under the applicable legal standards.

The trial court did not abuse its discretion in granting S's motion to stay the summary process action, that court having properly balanced the interests at stake.

Despite the plaintiff's obvious interest in expediting the summary process action, that interest was outweighed by S's interests in availing himself of his statutory rights under the fair rent commission statutes and the beneficial effects conferred on him as the prevailing party before the commission, the commission's interest in defending its decision in the administrative appeal, and the trial court's interest in the efficient use of judicial resources given the effect that the commission's decision may have on critical issues in the summary process action, including claims of nonpayment of rent and retaliation.

Moreover, the outcome of the administrative appeal could bear on the merits of the defenses that S raised in the summary process action, and a denial of S's request for a stay would have created a risk of inconsistent decisions concerning the same premises and the parties to both the summary process action and the administrative appeal.

Furthermore, any prejudice to the plaintiff stemming from a delay in the summary process action was mitigated by the requirement under § 7-148e that trial courts afford fair rent administrative appeals "privileged" treatment "with respect to the order of trial."

This court declined to address the plaintiff's claims concerning the constitutionality of the fair rent commission statutes and the commission's alleged usurpation of the trial court's authority in issuing the cease and desist order.

It was not necessary for this court to decide the plaintiff's constitutional claims in disposing of this appeal, and the trial court, in granting S's motion to stay, did not explicitly or implicitly address the cease and desist issue, and, accordingly, the plaintiff was not aggrieved by an order or decision of the trial court for purposes of this court's appellate review of that issue under § 52-265a.

Argued March 2—officially released June 9, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Hartford, Housing Session, where the court, *Lopez, J.*, granted the named defendant's motion for a stay pending the outcome of an

administrative appeal; thereafter, upon certification by the Chief Justice pursuant to General Statutes § 52-265a that a matter of substantial public interest was involved, the plaintiff appealed to this court. *Affirmed*.

*Ian G. Gottlieb*, with whom were *David E. Rosenberg* and *Paul J. Small*, for the appellant (plaintiff).

*Douglas H. Butler*, with whom were *Johannes Wetzel* and, on the brief, *Giovanna Shay* and *Wyatt Cote*, certified legal intern, for the appellee (named defendant).

*Michael Chuchev* filed a brief as amicus curiae.

*John W. Cerreta* and *Max Clayton* filed a brief for the Connecticut Association of Realtors, Inc., as amicus curiae.

*Demar G. Osbourne*, assistant corporation counsel, filed a brief for the city of Hartford as amicus curiae.

*Jeffrey Gentes* and *Anika Singh Lemar*, and *Galen Fastie*, *Grady Martin*, *Uma Menon* and *Dylan Shapiro*, law student interns, filed a brief for the New Haven Legal Assistance Association et al. as amici curiae.

*Opinion*

MULLINS, C. J. The dispositive issue in this interlocutory public interest appeal is whether the trial court properly stayed a summary process action for nonpayment of rent during the pendency of the landlord's administrative appeal from a fair rent commission decision involving the same premises pursuant to General Statutes § 7-148e. Given the relevance of the fair rent commission's determination of the proper rent to the merits of this summary process action based on nonpayment of rent, we conclude that the trial court did not abuse its discretion when it granted the motion of the named defendant, Angel Suarez,[1] to stay this summary process action brought

---

[1] The plaintiff also named John Doe and Jane Doe as defendants in counts two and three of the summary process complaint, claiming that Suarez had allowed additional, unidentifiable persons to take up occupancy of the premises without the plaintiff's knowledge or acquiescence.

by the plaintiff, TOV Realty, LLC, pending resolution of the administrative appeal. Accordingly, we affirm the decision of the trial court.

The record reveals the following relevant facts. The plaintiff leased an apartment on Asylum Avenue in Hartford to the defendant for a one year term from August 1, 2023, through July 31, 2024. The monthly rent as stated in the lease was $1050, although a concession addendum to the lease provided that the plaintiff would accept $700 per month as the rent for the one year term of the lease. Any holdover rent would be subject to a $100 increase in the monthly rent.

After the defendant had lived in the apartment for nearly a year, on July 24, 2024, the plaintiff's property manager, UP Realty, LLC (UP Realty), notified him that a new lease would begin on August 1, 2024, and that his monthly rent would increase from the discounted rate of $700 to the original base amount of $1050. On July 30, 2024, the defendant filed a complaint with the Hartford Fair Rent Commission (Hartford commission), alleging that the proposed rent increase was unfair. The next day, July 31, 2024, the Hartford commission certified notice of the complaint to UP Realty. In that notice, the Hartford commission "advised" UP Realty that (1) "the [defendant] is not obligated to pay the new rental amount during this investigation, which includes the penalty for not paying the new rental amount," and (2) "it is illegal to retaliate against [the defendant] for submitting this complaint to the [Hartford] [c]ommission." The Hartford commission also cited to and provided a copy of the antiretaliation statute, General Statutes § 47a-20.[2]

While the matter was pending before the Hartford commission, the defendant paid, and the plaintiff accepted,

Suarez has denied these allegations. For the sake of convenience, all references herein to the defendant are to Suarez.

[2]General Statutes § 47a-20 provides: "A landlord shall not maintain an action or proceeding against a tenant to recover possession of a dwelling unit, demand an increase in rent from the tenant, or decrease the services to which the tenant has been entitled within six months after: (1) The tenant has in good faith attempted to remedy by any lawful

rent in the amount of $700 per month for the months of August, September, October, and November, 2024. On December 6, 2024, however, the defendant attempted to pay the $700 for the December rent, but the plaintiff's online tenant portal with UP Realty would not accept the payment and also indicated that the defendant had a rental arrearage of approximately $3000.

On December 6, 2024, the Hartford commission sent notice to the parties that a hearing would be held on December 19, 2024. On December 15, 2024, prior to the scheduled hearing, the plaintiff served the defendant with a notice to quit for nonpayment of rent. UP Realty did not appear at the hearing scheduled for December 19, 2024, because its attorney was ill; the Hartford commission continued the hearing to January 16, 2025, in order to obtain the plaintiff's ledger for the defendant's account. UP Realty thereafter moved to dismiss the commission proceedings for lack of jurisdiction on the ground that its notice to quit had operated to terminate the lease for nonpayment of rent.

Following the January 16, 2025 hearing, on January 28, 2025, the Hartford commission issued a decision, finding that the plaintiff's proposed rent increase was unfair and setting the defendant's monthly rent at $700 until July 31, 2025, with an increase to $900 from August 1, 2025, through January 31, 2026, should he remain in the apartment. The Hartford commission also issued a cease and desist order, finding that the plaintiff,

means, including contacting officials of the state or of any town, city or borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation, or of the housing and health ordinances of the municipality wherein the premises which are the subject of the complaint lie; (2) any municipal agency or official has filed a notice, complaint or order regarding such a violation; (3) the tenant has in good faith requested the landlord to make repairs; (4) the tenant has in good faith instituted an action under subsections (a) to (i), inclusive, of section 47a-14h; or (5) the tenant has organized or become a member of a tenants' union."

through UP Realty,[3] had retaliated against the defendant by seeking an eviction within six months from the filing of the defendant's fair rent complaint, in violation of § 47a-20. See General Statutes § 47a-20 (1). The Hartford commission ordered the plaintiff, through UP Realty, to cease and desist from pursuing a retaliatory eviction and to withdraw the summary process action under penalty of fines as provided by General Statutes § 7-148f.[4]

On February 5, 2025, a state marshal served the defendant with the summary process complaint at issue in this appeal. In its complaint, which was returned for filing in the trial court on February 14, 2025, the plaintiff sought possession of the premises for, among other reasons, nonpayment of rent. The plaintiff also filed a motion for use and occupancy payments. Subsequently, on March 17, 2025, UP Realty brought an administrative appeal in the Superior Court from the decision of the Hartford commission pursuant to § 7-148e.[5]

The defendant filed an amended answer and special defenses in the summary process action on April 17, 2025. Among the special defenses were retaliatory eviction under § 47a-20 and General Statutes § 47a-33, and an equitable defense seeking dismissal of the action in light of the Hartford commission's cease and desist order. The defendant then moved to stay the summary process action pending the result of UP Realty's administrative

[3]We note that the Hartford commission refers in its various orders to UP Realty, the property manager and respondent before it, as the "owner" of the property, rather than the plaintiff. We are not aware of any claim that the status of the plaintiff's property manager as the party before the Hartford commission renders that agency's orders not binding on the plaintiff.

[4]The Hartford commission issued a corrected cease and desist order in March, 2025, which differed from the January order only insofar as it corrected a misstatement of the plaintiff's proposed monthly rent amount from $1500 to $1050.

[5]We granted the defendant's motion to take judicial notice of the existence of the administrative appeal, *UP Realty, LLC* v. *Fair Rent Commission*, Superior Court, judicial district of Hartford, Housing Session, Docket No. HFH-CV-25-6033680-S, along with a stipulation establishing a briefing order in the administrative appeal and the Hartford commission's administrative record filed in that case.

appeal from the Hartford commission's decision under § 7-148e. The plaintiff objected to the motion for a stay on the grounds that the Hartford commission lacked jurisdiction to issue remedies that would bar or delay judicial proceedings, and there was no equitable basis for the stay. The trial court granted the defendant's motion for a stay on May 16, 2025.

In the meantime, on May 14, 2025, the defendant moved to consolidate the administrative appeal with the summary process action. The plaintiff objected, and the trial court denied the motion to consolidate on May 16, 2025. The administrative appeal remains pending.

On November 6, 2025, the trial court denied the plaintiff's motion for reconsideration of the stay order. The plaintiff then filed this public interest appeal pursuant to General Statutes § 52-265a.[6]

On appeal, the plaintiff claims that the trial court lacked the statutory authority to stay this summary process action pending resolution of the administrative appeal from the Hartford commission's January 28, 2025 decision under § 7-148e and, in the alternative, that the court abused its discretion in doing so. The plaintiff also

[6]Chief Justice Mullins granted the plaintiff's application for certification to appeal to this court pursuant to § 52-265a on November 26, 2025. Subsequently, this court issued a briefing schedule and directed the parties to address the following two issues: (1) "Whether the Hartford . . . commission has the authority to order the plaintiff to cease and desist from bringing a summary process action or to withdraw such an action?" And (2) "[w]hether the trial court abused its discretion in granting the defendant's motion to stay the summary process action pending the resolution of [UP Realty's] administrative appeal [from] the Hartford . . . [c]ommission's January 28, 2025 decision?"

For the reasons explained in part II B of this opinion, we do not address the first question because the trial court has not—in either this summary process action or the administrative appeal—issued an order or decision, as required by § 52-265a (a), addressing whether the Hartford commission had the authority to order the plaintiff to cease and desist from bringing this summary process action or to withdraw the action. We also note that, although this is an interlocutory appeal, this court has jurisdiction over the appeal because there is no final judgment requirement for appeals brought pursuant to § 52-265a. See, e.g., *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 67, 262 A.3d 823 (2021).

raises an array of broad attacks regarding the scope of the authority of the Hartford commission and the constitutionality of the fair rent commission statutes.

To the extent that the plaintiff challenges the trial court's exercise of its discretion to stay this summary process action, we review that determination for an abuse of discretion. See, e.*g.*, *In re Ivory W.*, 342 Conn. 692, 729–30, 271 A.3d 633 (2022). The issue of whether the trial court lacked the inherent or statutory authority to grant the defendant's motion to stay presents a question of law over which our review is plenary. See, e.*g.*, *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 166, 75 A.3d 651 (2013); see also, e.*g.*, *In re Henrry P. B.-P.*, 327 Conn. 312, 324–25, 173 A.3d 928 (2017) (question regarding trial court's statutory authority involves statutory interpretation under General Statutes § 1-2z).

I

A review of the intersection of the fair rent commission statutes and the landlord-tenant statutes provides useful context for the plaintiff's claims in this appeal. That relationship presents a question of first impression for this court.

A

We begin with a review of the relevant landlord-tenant statutes. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers-Northeast, Inc.*, 292 Conn. 459, 466, 974 A.2d 626 (2009). "Service of a valid notice to quit, which terminates the lease and creates a tenancy at sufferance . . . is a condition precedent to a summary process action under [General Statutes] § 47a-23 that implicates the trial court's subject matter jurisdiction

over that action." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id.

Landlords do not have unfettered rights to bring summary process actions. See, e.g., General Statutes § 47a-23c (prohibiting eviction of certain tenants, including disabled persons and those sixty-two years of age or older, except for specified good cause). Pertinent to this case, § 47a-20 prohibits a landlord from undertaking a variety of adverse actions, namely, "maintain[ing] an action or proceeding against a tenant to recover possession of a dwelling unit, demand[ing] an increase in rent from the tenant, or decreas[ing] the services to which the tenant has been entitled," within six months from the filing of the tenant's complaint with a fair rent commission or the tenant's seeking relief from a variety of public officials and agencies. See footnote 2 of this opinion. General Statutes § 47a-20a, however, provides exceptions to § 47a-20 and permits a "landlord [to] maintain an action to recover possession of the dwelling unit" for, among other reasons, "[t]he tenant . . . using the dwelling unit for an illegal purpose or for a purpose which is in violation of the rental agreement or for nonpayment of rent . . . ." General Statutes § 47a-20a (a) (1).

A body of Appellate Court and Superior Court case law gives effect to §§ 47a-20 and 47a-20a through various measures governing pleading and proof in a summary process action. These statutes have been invoked as special defenses. See, e.g., *Visco* v. *Cody*, 16 Conn. App. 444, 445–46, 547 A.2d 935 (1988); *Mobilia, Inc.* v. *Santos*, 4 Conn. App. 128, 130, 492 A.2d 544 (1985); see also, e.g., *Almada* v. *Wausau Business Ins. Co.*, 274 Conn. 449, 456, 876 A.2d 535 (2005) (explaining nature of special defenses). Section 47a-20 does not provide "a right . . . to tenants, but rather a limitation [on] the remedies of the landlord." *Alteri* v. *Layton*, 35 Conn. Supp. 261, 264, 408 A.2d 18 (1979). Section 47a-20 "establishes retaliation as a presumption . . . if a summary process action is initiated within six months [from the filing] of a [tenant's] complaint [with a fair rent commission],

which the landlord must then successfully rebut." *Visco* v. *Cody*, supra, 450 n.7.

The Appellate Court has followed numerous Superior Court decisions interpreting "§ 47a-20a to contain the only grounds for rebutting the presumption of retaliation created by § 47a-20." *Correa* v. *Ward*, 91 Conn. App. 142, 147, 881 A.2d 393 (2005); see also id., 147–48 (discussing cases). Once a tenant has presented prima facie evidence to establish a presumption of retaliatory action by the landlord under § 47a-20, it becomes the landlord's obligation under § 47a-20a to submit "substantial countervailing evidence to rebut" that presumption and to "establish [its] legitimate interest in the eviction." *Alteri* v. *Layton*, supra, 35 Conn. Supp. 264; see, e.g., *Holdmeyer* v. *Thomas*, 167 Conn. App. 544, 546–47, 549, 144 A.3d 1052 (2016) (tenant's failure to help address maintenance issues did not rebut presumption of retaliation imposed by § 47a-20 with respect to summary process action filed shortly after tenant's complaint about bedbugs to local health district); *Correa* v. *Ward*, supra, 148–49 (trial court incorrectly concluded that presumption of retaliation was rebutted when landlord filed summary process action within six months of tenant's good faith request that landlord make repairs to stove, as tenant's use of "foul language and recant[ing] [of] an oral agreement to pay one half of the cost of the stove" did not "[fall] under any of the four exclusive grounds [for rebutting the presumption of retaliation] listed in § 47a-20a [a]").

Moreover, even after a landlord has rebutted the presumption of retaliation, the tenant may still assert a special defense of retaliation under § 47a-33,[7] which

[7] General Statutes § 47a-33 provides: "In any action for summary process under this chapter or section 21-80 it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city, borough or public agency *or filing a complaint with a fair rent commission*, any condition constituting a violation of any of the provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie. The obligation on the part of the defendant to pay rent or the reasonable value of the use and occupancy of the premises which

requires "affirmative proof . . . that the landlord's *primary* motive in seeking an eviction was in retaliation for the tenant's exercise of his statutory right to report housing code violations to the appropriate authorities."[8] (Emphasis added.) *Alteri* v. *Layton*, supra, 35 Conn. Supp. 264–65.

B

The fair rent commission statutes, under which the defendant obtained relief in the proceeding before the Hartford commission, provide an added layer of protection to tenants. Under these statutes, all municipalities with a population of 15,000 or more persons must establish or join a fair rent commission that "shall make studies and investigations, conduct hearings and receive

are the subject of any such action shall not be abrogated or diminished by any provision of this section." (Emphasis added.)

[8]Although § 47a-33 refers to the "affirmative defense" of retaliation, the legislature did not define the term or suggest that it means something different from "special defense," which is how affirmative defenses are denominated under our rules of practice. See Practice Book § 10-50 (providing nonexhaustive list of matters to be pleaded as special defenses). As is true with affirmative defenses in federal courts and in other jurisdictions, in Connecticut, "[g]enerally speaking, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." (Citations omitted; internal quotation marks omitted.) *Almada* v. *Wausau Business Ins. Co.*, supra, 274 Conn. 456. The defendant typically bears the burden of pleading and proving a special defense, rendering it synonymous with the term "affirmative defense" in a way that relieves the plaintiff from having to "prov[e] a negative." (Internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 435, 984 A.2d 734 (2009).

In the landlord-tenant context, § 47a-33, which requires the tenant to plead *and* prove retaliation affirmatively, operates like a more typical special defense. In contrast, the retaliation defense governed by §§ 47a-20 and 47a-20a, although still a special defense, is different from a traditional special defense because of the burden shifting scheme, which requires the landlord to rebut the presumption of retaliation that is established when the tenant pleads the defense and presents evidence that the summary process action was commenced within six months from the filing of the tenant's complaint with the local fair rent commission. See, e.g., *Visco* v. *Cody*, supra, 16 Conn. App. 450 n.7.

complaints relative to rental charges on housing accommodations . . . in order to control and eliminate excessive rental charges on such accommodations, and to carry out the provisions of sections 7-148b to 7-148f, inclusive, section 47a-20 and subsection (b) of section 47a-23c. The commission, for such purposes, may compel the attendance of persons at hearings, issue subpoenas and administer oaths, issue orders and continue, review, amend, terminate or suspend any of its orders and decisions. The commission may be empowered to retain legal counsel to advise it. All hearings conducted pursuant to this section shall be open to the public." General Statutes (Supp. 2026) § 7-148b (b);[9] see General Statutes § 7-148b (a) (defining "rental charge" to "[include] any fee or charge in addition to rent that is imposed or sought to be imposed upon a tenant by a landlord").

At a hearing, a fair rent commission determines whether "the rental charge or proposed increase in the rental charge for any housing accommodation is so excessive, based on the standards and criteria set forth in section 7-148c,[10] as to be harsh and unconscionable .

[9]Although § 7-148b was amended after the Hartford commission issued its January 28, 2025 decision; see Public Acts, Spec. Sess., November, 2025, No. 25-1, § 35; Public Acts 2025, No. 25-121, § 1; those amendments have no bearing on the merits of this appeal. For purposes of clarity and convenience, we refer to the current version of the statute.

[10]General Statutes § 7-148c provides a multifactor inquiry: "In determining whether a rental charge or a proposed increase in a rental charge is so excessive, with due regard to all the circumstances, as to be harsh and unconscionable, a fair rent commission shall consider such of the following circumstances as are applicable to the type of accommodation: (1) The rents charged for the same number of rooms in other housing accommodations in the same and in other areas of the municipality; (2) the sanitary conditions existing in the housing accommodations in question; (3) the number of bathtubs or showers, flush water closets, kitchen sinks and lavatory basins available to the occupants thereof; (4) services, furniture, furnishings and equipment supplied therein; (5) the size and number of bedrooms contained therein; (6) repairs necessary to make such accommodations reasonably livable for the occupants accommodated therein; (7) the amount of taxes and overhead expenses, including debt service, thereof; (8) whether the accommodations are in compliance with the ordinances of the municipality and the general statutes relating to health and safety; (9) the income of the petitioner

. . .” (Footnote added.) General Statutes § 7-148d (a). Upon making that finding, a fair rent commission “may order that the rent be limited to such an amount as it determines to be fair and equitable.” General Statutes § 7-148d (a); see also, e.g., General Statutes § 7-148d (a) (discussing fair rent commission’s authority with respect to rent for “housing accommodation [that] fails to comply with any municipal ordinance or state statute or regulation relating to health and safety”); *Grateful Holdings, LLC* v. *Housing & Fair Rent Commission*, Docket No. HHB-CV-24-6088028-S, 2025 WL 1378954, *3 (Conn. Super. May 6, 2025) (commission has authority to determine both amount of adjusted rent and duration of tenancy in providing relief).

Fair rent commissions are expressly empowered by statute to enforce the antiretaliation protections provided by § 47a-20 beyond the general authority conferred by § 7-148b (b). First, if a fair rent “commission determines, after a hearing, that a landlord *has retaliated in any manner against a tenant* because the tenant has complained to the commission, the commission may order the landlord to *cease and desist from such conduct*.” (Emphasis added.) General Statutes § 7-148d (b). Second, a fair rent commission may impose fines[11] against “[a]ny person who violates any order of rent reduction or rent suspension by demanding, accepting or receiving an amount in excess thereof while such order remains in effect, and no appeal pursuant to section 7-148e is pending, or violates any other provision of sections 7-148b to 7-148e, inclusive, and section 47a-20, or who refuses to obey any subpoena,

and the availability of accommodations; (10) the availability of utilities; (11) damages done to the premises by the tenant, caused by other than ordinary wear and tear; (12) the amount and frequency of increases in rental charges; (13) whether, and the extent to which, the income from an increase in rental charges has been or will be reinvested in improvements to the accommodations.”

[11] Fair rent commissions are authorized to impose fines of “not less than twenty-five dollars nor more than one hundred dollars for each offense. If such offense continues for more than five days, it shall constitute a new offense for each day it continues to exist thereafter.” General Statutes § 7-148f.

order or decision of a commission pursuant thereto . . . ." General Statutes § 7-148f.

Finally, the fair rent commission statutes provide for judicial review of a commission decision via administrative appeal by "[a]ny person aggrieved by any order of the commission . . . to the superior court for the judicial district in which the town, city or borough is located. Any such appeal shall be considered a privileged matter with respect to the order of trial." General Statutes § 7-148e.

Largely because of their silence on the subject, the fair rent commission statutes are not clear and unambiguous with respect to how commission decisions might affect the exercise of the Superior Court's jurisdiction over a matter concerning the same property, like the summary process action at issue here. See, e.g., *Kelsey* v. *Commissioner of Correction*, 343 Conn. 424, 433, 274 A.3d 85 (2022) ("[s]ilence renders a statute ambiguous when the missing subject reasonably is necessary to effectuate the provision as written, and the missing subject renders the statute susceptible to more than one plausible interpretation"). Thus, § 1-2z permits us to consider extratextual sources, including the legislative history, to determine whether the legislature intended fair rent commission decisions to affect the proceedings in a pending summary process action. See, e.g., id., 433–34.

By way of background, we note that the legislature enabled municipalities to create fair rent commissions nearly six decades ago, in 1969, to address housing quality and affordability problems in Connecticut. See Public Acts 1969, No. 274, § 1. The legislature initially focused on housing issues in the state's urban areas, where it was deemed "high time that slum lords rectify the conditions that exist in many of the houses [for which] they charge excessive rents." 13 H.R. Proc., Pt. 6, 1969 Sess., p. 2946, remarks of Representative Leonard G. Frazier; see, e.g., id., pp. 2950–51, remarks of Representative Michael L. Morano (discussing tenants in his district in Greenwich, who routinely faced annual rent increases of 40 to 60 percent); id., pp. 2952–53, remarks of Representative

Stewart B. McKinney (addressing shortage of affordable moderate-income housing). In 1972, in order to "[strengthen] the authority" of the commissions; 15 H.R. Proc., Pt. 3, 1972 Sess., p. 1322, remarks of Representative Albert R. Webber; the legislature enacted No. 160, §§ 1 and 3, of the 1972 Public Acts, which authorized fair rent commissions to issue orders and to retain legal counsel, as well as to levy penalties. That same public act also added the antiretaliation provision in what is now § 47a-20 and the language in what is now § 47a-33 establishing an affirmative defense of retaliation. Public Acts 1972, No. 160, §§ 4 and 5.

The statutory provision in § 7-148d (b) relating to cease and desist orders was enacted in 1983. See Public Acts 1983, No. 83-425 (P.A. 83-425). Speaking in support of the bill that became P.A. 83-425, Representative John Wayne Fox explained that it was intended to address "the authority and power of a [f]air [r]ent [c]ommission . . . to order a property owner not to engage in retaliatory eviction." 26 H.R. Proc., Pt. 14, 1983 Sess., p. 4708. Representative Fox explained that the amendment to the statute "clarifies that issue and states without doubt that [a] [f]air [r]ent [c]ommission does in fact have that authority." Id.; see also Conn. Joint Standing Committee Hearings, Planning and Development, 1983 Sess., Pt. 1, p. 34, remarks of Attorney Raphael L. Podolsky (explaining existing "ambiguity" with respect to whether fair rent commission "has the power to order the landlord not to [instigate] an eviction" and urging that legislature amend statute to "make clear that the . . . [c]ommission has [that] power").

This history further indicates that the legislature intended that fair rent commissions and the Superior Court have independent, but interrelated, jurisdictions, with a fair rent commission's findings and decision having relevance in a summary process action concerning the same parties and premises. In connection with the legislature's 2022 expansion of fair rent commissions; see Public Acts 2022, No. 22-30, § 1 (providing that

certain municipalities must create fair rent commission); Senator Rick Lopes stated, while discussing rent disputes that progress to eviction proceedings, that a fair rent commission "would seriously help the person who received [a] positive [commission] ruling. So going to . . . housing court would not benefit the person who was on the losing side of that ruling. They would be going to housing court with a . . . [c]ommission ruling saying no, this [rent] increase is too much or isn't too much. And it definitely would be a deciding factor used in court. So it would not behoove the person . . . in the losing situation . . . because they've already been found by a group of their peers . . . that the [rent] increase is either justified or not justified." 65 S. Proc., Pt. 5, 2022 Sess., pp. 3152–53. Senator Lopes described a fair rent commission's ruling as having a strong "evidentiary" value in court proceedings, but he did not envision fair rent commissions being involved "personally, or directly," in most cases. Id., p. 3153.

Accordingly, the relationship between the statutory schemes suggests that a fair rent commission's ruling has—at the very least—evidentiary value with respect to the determination of whether a nonpayment of rent has occurred for purposes of a summary process action. For this reason, a fair rent commission's ruling is relevant to whether a tenant has met his or her obligation to pay rent, which is an issue that directly affects the merits of the summary process action. See, e.g., *Century Hills Property Owner, LLC* v. *Wong*, Docket No. NBH-CV-23-6009980-S, 2023 WL 4073599, *2–3 (Conn. Super. June 14, 2023) (concluding that retaliation defenses under §§ 47a-20 and 47a-33 were not available in summary process action that was brought when tenants missed payment during pendency of fair rent commission proceedings but rendering judgment for tenants pursuant to equitable nonforfeiture doctrine given tenants' immediate payment of late rent in amount that had been agreed on and their continued timely payment of rent). Put differently, the result of the pending administrative appeal from the

decision of the Hartford commission may well affect the outcome of this summary process action.

## II

With these principles in mind, we turn to the merits of this public interest appeal, which raises **(1)** the question of whether the trial court abused its discretion in granting the defendant's motion to stay the summary process action pending the resolution of the administrative appeal from the Hartford commission's decision, and **(2)** a variety of issues concerning the authority of the Hartford commission, including whether it may order the plaintiff to cease and desist from bringing a summary process action or to withdraw such an action. We conclude that the trial court did not abuse its discretion in staying the summary process action and decline to reach the other issues.

## A

We begin with the plaintiff's contention that the expeditious nature of the statutory summary process proceeding means that a trial court's authority to grant a stay or continuance of a summary process action is limited to that provided by **(1)** General Statutes § 47a-35, which provides for automatic stays of execution during the five day appeal period after judgment had been rendered in a summary process action and the pendency of an appeal from that judgment, and **(2)** General Statutes § 47a-39, which governs other postjudgment stays of execution. We disagree. These statutes govern stays in the postjudgment context, and they say nothing about the trial court's inherent authority to manage its docket by granting appropriate continuances or stays during the pendency of a summary process action.[12] See, *e.g.,*

[12]The plaintiff's reliance on *Prevedini* v. *Mobil Oil Corp.*, 164 Conn. 287, 320 A.2d 797 (1973), with respect to the trial court's authority to grant continuances of a summary process action is misplaced. This court's decision in *Prevedini* concerned only whether the Appellate Division of the former Circuit Court had jurisdiction over a challenge to an order of the Circuit Court staying a summary process action pending resolution of a Superior Court case involving the same parties, same

*Young* v. *Young*, 249 Conn. 482, 490–96, 733 A.2d 835 (1999) (summary process statutory provisions, including appeal provision of § 47a-35, did not preclude trial court from determining that timely filing of motion to reargue pursuant to Practice Book § 11-11 would operate to toll mandatory five day appeal period under § 47a-35). Trial judges need the flexibility to issue prejudgment stays as necessary because summary process actions, which have been tried in the housing session of the Superior Court since the consolidation of Connecticut courts, embrace increasingly complex issues beyond possession, such as retaliation, equitable, and housing code defenses. See, e.g., *Southland Corp.* v. *Vernon*, 1 Conn. App. 439, 447–50, 473 A.2d 318 (1984); see also, e.g., *Fellows* v. *Martin*, 217 Conn. 57, 61–62, 66–67, 584 A.2d 458 (1991) (leading case recognizing equitable defenses in summary process actions). This complexity, which would extend to accommodating parallel fair rent commission proceedings concerning the same parties and premises, implicates the trial judge's discretion with respect to appropriate case management, including, among other things, the statutory authority to transfer a summary process matter to the regular civil docket or an administrative appeal to the housing docket. See General Statutes § 47a-70 (a) and (b); see also, e.g., *Southland Corp.* v. *Vernon*, supra, 449. There is no statute depriving the Superior Court of its authority to issue an order granting a motion to stay a summary process action when such order is proper under the applicable legal standards.

Having concluded that the trial court had the authority to stay the summary process action, we next consider whether it abused its discretion by doing so. A motion to stay an action pending resolution of another proceeding is akin to a motion for a continuance. See, e.g., *In re Ivory W.*, supra, 342 Conn. 695, 729–30 (considering motion for continuance of trial on petitions to terminate

commercial lease, and same premises. See id., 290–92. *Prevedini* implicated only questions of appellate finality, insofar as "an order staying proceedings does not ordinarily terminate an action but merely postpones it and is normally considered interlocutory." Id., 292; see also id., 293.

respondent mother's parental rights pending outcome of parallel criminal case under discretionary standards guiding stays and continuances). As such, a trial court's decision to grant a motion to stay is a discretionary one, guided by the "interests of justice"; (internal quotation marks omitted) id., 729; that "will not be disturbed on appeal [in the absence of] an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's [decision to grant a motion to stay the proceedings] was arbitrary." (Internal quotation marks omitted.) Id., 730.

"In determining whether to impose a stay . . . [a trial] court must balance the interests of the litigants, non-parties, the public and the court itself. . . . The factors a [trial] court should consider include: [1] the interests of the [nonmoving party] in an expeditious resolution and the prejudice to the [nonmoving party] in not proceeding; [2] the interests of and burdens on the [moving party]; [3] the convenience to the court in the management of its docket and in the efficient use of judicial resources; [4] the interests of other persons not parties to the civil litigation; and [5] the interests of the public in the pending . . . actions." (Internal quotation marks omitted.) Id., 729; see also, e.g., *Bridgeport Harbour Place I, LLC* v. *Ganim*, 269 F. Supp. 2d 6, 8–11 (D. Conn. 2002) (setting forth and applying factors); *Tyler* v. *Shenkman-Tyler*, 115 Conn. App. 521, 529–31, 973 A.2d 163 (same), cert. denied, 293 Conn. 920, 979 A.2d 493 (2009).

Considering these interests, we conclude that there was no abuse of discretion in this case. Although the plaintiff, as the nonmoving party, has an obvious interest in expediting the conclusion of the summary process action, the trial court did not abuse its discretion by deeming that interest outweighed by (1) the defendant's interests in availing himself of his statutory rights under the fair rent commission statutes and the beneficial effects conferred on him as the prevailing party in the

Hartford commission's administrative proceeding, **(2)** the nonparty Hartford commission's interest in defending its decision in the administrative appeal, and **(3)** the convenience to the trial court in the efficient use of judicial resources given the effect that the Hartford commission's decision may have on critical issues in the summary process action. In particular, the Hartford commission's decision, as challenged in the administrative appeal, pertains directly to issues regarding nonpayment of rent and retaliation under §§ 47a-20, 47a-20a and 47a-33, and involves the same parties or parties with identical interests as the parties to this summary process action. Moreover, depending on various other facts, some of which are presently unknown, the outcome of the administrative appeal could bear on the merits of the defenses raised by the defendant in the summary process action.[13] Had the trial court denied the defendant's motion to stay the summary process action and proceeded with that action while the administrative appeal remained pending, it would have created a risk of inconsistent decisions concerning the same parties and premises. As the defendant points out, avoiding inconsistent judicial decisions is a paradigmatic reason to stay a proceeding. See, e.g., *KI, Inc.* v. *KP Acquisition Partners, LLC*, Docket No. X05-FST-CV-09-60027474-S, 2010 WL 4276764, *5 (Conn. Super. September 24, 2010). Any prejudice to the plaintiff caused by delay in the summary process

---

[13]For example, the defendant pleaded the defense of equitable nonforfeiture in the summary process action. "The doctrine of equitable nonforfeiture is a defense implicating the right of possession that may be raised in a summary process proceeding, and is based on the principle that [e]quity abhors . . . a forfeiture. . . . Equitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not [wilful] or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." (Citation omitted; internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, 337 Conn. 228, 239–40, 253 A.3d 1 (2020); see, e.g., *Fellows* v. *Martin*, supra, 217 Conn. 66–67; see also, e.g., *Boccanfuso* v. *Daghoghi*, supra, 241–42 (nonpayment is not wilful if "accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease" (internal quotation marks omitted)).

action, which is otherwise intended to be an expeditious proceeding, is mitigated by the statutory requirement that the Superior Court afford fair rent administrative appeals "privileged" treatment "with respect to the order of trial." General Statutes § 7-148e. Accordingly, we conclude that the trial court did not abuse its discretion in granting the defendant's motion to stay the summary process action.[14]

B

Finally, the plaintiff raises a variety of other issues concerning the fair rent commission statutes, including an attack on their constitutionality under the separation of powers doctrine, and a claim that the Hartford commission usurped the authority of the trial court by ordering the plaintiff to cease and desist from bringing this summary process action. Although we ordered the parties to brief the question of whether the Hartford commission had the authority to order the plaintiff to cease and desist from bringing the summary process action or to withdraw the action; see footnote 6 of this opinion; we nevertheless decline to reach these issues.

First, the trial court's decision to stay the summary process action did not address the cease and desist issue expressly, and the court did not implicitly decide that issue insofar as its resolution was unnecessary to the court's determination of the stay issue. The resolution

---

[14]As we noted previously, the trial court denied the defendant's motion to consolidate the administrative appeal and this summary process action. The correctness of this decision is not directly before us in this appeal. Nevertheless, we observe that, given the similarity of the factual issues in the summary process action and the administrative appeal pursuant to § 7-148e, in addition to the privileged treatment of administrative appeals mandated by § 7-148e, judicial economy likely would have been served by consolidating them for trial and decision under Practice Book § 9-5, with such consolidation not prejudicing either party's substantive rights. See, e.g., *Rode* v. *Adley Express Co.*, 130 Conn. 274, 277, 33 A.2d 329 (1943); *Groth* v. *Redmond*, 24 Conn. Supp. 467, 468–69, 194 A.2d 531 (1962). As a matter of case management, the trial court may exercise its discretion to bifurcate or stage the two matters as necessary to address the various elements and standards of review that apply to each matter.

of the stay issue turns on the need to await the trial court's final determination as to whether the Hartford commission's decision was correct with respect to the rent amount and its jurisdiction to render that decision under the circumstances of this case. These issues directly inform the merits of the summary process action. The trial court has not rendered a decision regarding the cease and desist order, and the plaintiff, therefore, is not yet "aggrieved by an order or decision of the Superior Court" for purposes of our review under § 52-265a (a). That an issue implicates the public interest under § 52-265a (a) does not confer jurisdiction when the statutory prerequisites are not met. See, e.g., *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 745, 219 A.3d 744 (2019) (appeal under § 52-265a is limited to "a party" to action); *Wendy V.* v. *Santiago*, 319 Conn. 540, 543–45, 548, 125 A.3d 983 (2015) (dismissing § 52-265a appeal challenging trial court's failure to hold hearing on applications for restraining order, as required by General Statutes § 46b-15 (b), because such hearing was held after certification to appeal was granted, rendering appeal moot and, therefore, no longer justiciable).

Second, the plaintiff's advocacy about the constitutional issues[15] potentially implicated by the fair rent commission statutes does not overcome our well settled reluctance to "decide constitutional issues when resolving those issues is not necessary to dispose of the case before us." (Internal quotation marks omitted.) *State* v. *Lebrick*, 334 Conn. 492, 521 n.16, 223 A.3d 333 (2020). Given the early stage of both the summary process action and the parallel administrative appeal, we need not reach the

---

[15]To the extent the plaintiff argues that the trial court's stay of the summary process action constituted an "abdicat[ion] [of] its authority to the Hartford [commission]," particularly given the allegation of nonpayment of rent, we disagree. The trial court's decision to stay the summary process action pending the resolution of a parallel proceeding that might affect the merits of the summary process action did not represent an abdication of responsibility but, rather, the proper execution of the court's responsibility to manage parallel proceedings in an orderly, efficient, and sensible manner.

constitutional issues concerning the fair rent commission statutes at this time.

The trial court's decision to grant the motion for a stay is affirmed.

In this opinion the other justices concurred.